# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| YURIY PRAKHIN, | |
| Plaintiff, | Case No.: 14-924L |
| v. | Hon. Susan G. Braden |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## PLAINTIFF'S OPPOSITION TO THE UNITED STATES' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Rachel L. Kaylie, Esq.
Law Office of Yuriy Prakhin, P.C.
Counsel for Plaintiff
YURIY PRAKHIN
1883 86th Street, 2nd Floor
Brooklyn, NY 11214
718-946-5099 (tel.)
718-373-7614 (fax)

# TABLE OF CONTENTS

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS .................................................. 5

I. INTRODUCTION ................................................................................................... 5

II. ARGUMENT ........................................................................................................... 6

    A. The "Stabilization Doctrine" ....................................................................... 6

    B. The "Justifiable Uncertainty Doctrine" ....................................................... 7

    C. The Two Doctrines Combine to Delay the Accrual of Plaintiff's Claim ............ 7

    D. The Government's Mitigation Efforts ......................................................... 8

    E. Plaintiff's Justifiable Uncertainty as to the Permanency of the Damages ......... 10

    F. The *Vaizburd* Decision .............................................................................. 12

    G. Defendant Does Not Demonstrate that the Stabilization Doctrine Should be Excluded ................................................................................................. 14

III. CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

Cases

*Mildenberger v. United States*,
643 F.3d 938 (Fed.Cir. 2011) ............................................................................6, 7, 8

*Etchegoinberry v. United States*,
114 Fed.Cl. 437 (2013) ...................................................................................7, 14

*Vaizburd v. United States*,
57 Fed.Cl. 221 (2003) ...........................................................................5, 6, 11, 12, 13

# TABLE OF EXHIBITS

Exhibit A: United States Army Corps of Engineers website printout dated June 2014

Exhibit B: Times Ledger article dated January 24, 2008

Exhibit C: Gotham Gazette article dated May 27, 2003

Exhibit D: USACE new release dated September 18, 2014

Exhibit E: Various articles and new releases regarding the Coney Island/Sea Gate beach restoration project

Exhibit F: Copy of the June 30, 2003 *Vaizburd v. United States* Opinion

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

I.  **INTRODUCTION**

Plaintiff YURIY PRAKHIN hereby opposes the UNITED STATES' motion to dismiss the Complaint herein for lack of subject matter jurisdiction. In support of this opposition, Plaintiff YURIY PRAKHIN submits that the "stabilization doctrine" applies in the instant matter such that a taking claim has not yet accrued because a continuous physical process that was set in motion by Defendant has not yet stabilized.

In addition, the takings claim accrual date of December 31, 1995 in the prior matter, *Vaizburd*, does not apply to the instant matter as the Defendant UNITED STATES argues. The prior *Vaizburd* case, while based on similar circumstances, is distinguishable from the instant matter in that Plaintiff in this matter justifiably relied on the Government's actions and promises to mitigate the harm, which was brought to light in the *Vaizburd* matter. Since the Government has not yet completed the work it promised to do to mitigate the damage caused by its prior actions, which continues to cause Plaintiff's property to be enveloped by sand each year, the stabilization doctrine still applies to this day and thus, this Plaintiff's cause of action has not yet accrued.

Moreover, due to the ongoing work by the Government with regards to the subject beach and property in the Sea Gate section of Coney Island, Brooklyn, New York, it is currently impossible for the Plaintiff to know if the Government's actions are of a permanent nature so as to be able to reasonably foresee the extent of the damage to his property. Therefore, the stabilization doctrine must apply in the instant matter and the takings claim has not yet accrued.

Furthermore, the Defendant UNITED STATES has failed to discuss how traditional

accrual principles applied to the exclusion of the stabilization doctrine, especially given that the Defendant has, and continues to perform work on the subject area to try to rectify the problem complained of long ago in the *Vaizburd* matter.

## II. ARGUMENT

### A. The "Stabilization Doctrine"

Plaintiff contends that, although under traditional accrual principles the six year statute of limitations may normally apply, given the continuing circumstances with the ongoing work being performed by the UNITED STATES on the Sea Gate portion of the beach and the continued annual taking of plaintiff's property due to the Government's actions, the "stabilization doctrine" applies to the instant matter.

In its motion to dismiss, Defendant UNITED STATES cites the *Mildenberger* case to support its claim that the six year statute of limitations applies to this action. However, a more careful reading of the *Mildenberger* decision demonstrates that the Court must analyze the total circumstances to determine if the stabilization doctrine is applicable to this action. For the reasons discussed below, Plaintiff asserts that the stabilization doctrine applies herein, the accrual of time to make a claim under the takings clause has not run, and Defendant's motion to dismiss should be denied.

The *Mildenberger* Court essentially states that the "stabilization doctrine" is a doctrine "under which a taking claim does not accrue until a continuous physical process set in motion by the Government has stabilized, ..." *Mildenberger*, 643 F.3d at 943.

The *Mildenberger* Court further opines that "the 'touchstone for any stabilization analysis is determining when the environmental damage has made such substantial inroads into the

property that the permanent nature of the taking is evident and the extent of the damage is foreseeable.' 220 F3d at 1373. The obligation to sue arises once the permanent nature of the Government action is evident, regardless of whether damages are complete and fully calculable. *Goodrich v. United States*, 434 F.3d 1329, 1336 (Fed.Cir. 2006) (internal quotations and citations omitted)." *Mildenberger*, 643 F.3d at 946.

### B. The "Justifiable Uncertainty Doctrine"

In addition to, and in furtherance of the "stabilization doctrine," the "justifiable uncertainty doctrine" applies in the instant matter.

The United States Court of Federal Claims, in *Etchegoinberry v. United States*, 114 Fed.Ct. 437, 478, defined the "justifiable uncertainty" doctrine. "As further discussed below, the 'justifiable uncertainty' doctrine builds upon the stabilization doctrine and holds that government promises to mitigate damages to a plaintiff's property, which otherwise would constitute a taking, can warrant application of the stabilization doctrine and delay the accrual of a takings claim. *See Applegate v. United States*, 25 F.3d at 1582-83."

The *Etchegoinberry* Court further finds, "Binding precedent establishes that the stabilization doctrine applies when a taking is effected by a gradual, continual physical process, rather than a discrete event." 114 Fed.Ct. 437 at 483.

### C. The Two Doctrines Combine to Delay the Accrual of Plaintiff's Claim

In the instant matter, the Government has been promising the residents of Sea Gate for many years to remedy the rapid erosion of the beach area that is the subject of this action. Indeed, the Army Corps has taken some steps toward this, but the problems created by the prior work by the Army Corps are far from being remedied.

As such, plaintiff has relied on the Government's promises to mitigate the damages caused by the continuous physical process of the taking of his property, thus the delay in bring the instant action. Even to this day, due to the ongoing efforts by the Army Corps, the plaintiff still does not and cannot know when or if his land will be permanently destroyed, and the extent of the damage to Plaintiff's property is not yet foreseeable. Therefore, the stabilization doctrine, combined with the justifiable uncertainty doctrine, applies to the instant action to delay the tolling of the statute of limitations.

"Claimants now assert that the Government promised to mitigate the damage, thereby delaying accrual of their claims. As explained in *Banks v. United States*, the Government's promises to mitigate damages caused by a continuous physical process delays accrual of a takings claim when the claimant demonstrates that the ' 'predictability [and permanence] of the extent of the damage to the [claimant's] land' was made justifiably uncertain by the Corps' mitigation efforts.' 314 F.3d 1304, 1309 (Fed.Cir. 2003) (quoting *Applegate v. United States*, 25 F.3d 1579, 1583 (Fed. Cir.1994))." *Mildenberger*, 643 F.3d at 946-947.

A detailed description of the Government's efforts to mitigate the damages and promises made to the residents of Sea Gate are discussed herein.

**D.     The Government's Mitigation Efforts**

The website for the Army Corps of Engineers (hereinafter "USACE"), in June 2014, posted a history and projected timeline for the Coney Island/Sea Gate project of beach and sand restoration. A copy of the print out is annexed hereto as **Exhibit A**.

According to the Army Corps' own website, as shown in **Exhibit A**, the USACE obtained authorization for the Sea Gate Project in the year 2000. In 2004, USACE completed a

8

"Limited Reevaluation Report" for the Sea Gate Project and designs project. By 2013, none of the work to be done by the USACE for the Sea Gate Project had been done, despite the passage of approximately 18 years since the construction work on Coney Island was completed in 1995. In fact, the USACE's own Project History for the year 1995 notes the observation of "downdrift erosion" soon after construction.

Furthermore, it was not until 2013, according to the USACE's website Project History, that the federal government, under the Disaster Relief Appropriations Act of 2013 (Public Law 113-2), provided funding to construct the Sea Gate Project.

Moreover, as recently as 2014, the USACE completed another Limited Reevaluation Report for the Sea Gate Project by updating it to post-Sandy conditions.

In fact, in **Exhibit A**, under a section entitled <u>The Problem at Sea Gate</u>, the USACE admits that as a result of the Coney Island Project, which was completed in 1995, there were related problems of rapid sand erosion in Sea Gate west of the W. 37th Street Terminal Groin and accretion of sand along Gravesend Bay. It goes on to say that, "[w]ith continued erosion, there is a major risk of flanking the W. 37th Street Terminal Groin, which may lead to groin failure and significant impact to the Coney Island Public Beach. Repeated beachfill events were needed to mitigate the erosion at Sea Gate."

Finally, according to the Schedule noted in **Exhibit A**, T-groin construction for the Sea Gate Project was scheduled to take place in the fall of 2014 through the winter of 2016, sand placement in the spring of 2016, and completion of the project in the spring/summer of 2016.

In addition to the information provided by the Army Corps' own website, annexed hereto as **Exhibit B** is an article from the Times Ledger dated January 24, 2008 discussing the

allocation of federal funds to the project by the USACE for the construction of a T-groin meant to beach erosion in Sea Gate.

Also, an article dated May 27, 2003 from Gotham Gazette talks about the continuing problems of sand and beach erosion at Sea Gate in Brooklyn, and the Army Corps' ongoing efforts and plans to remedy the recurring problem. The article is annexed hereto as **Exhibit C**.

Additionally, a USACE news release dated September 18, 2014 reports of the awarding of a $25.2 million contract for the T-groin construction and sand placement work at Sea Gate. The news release is annexed hereto as **Exhibit D**.

Finally, annexed hereto collectively as **Exhibit E** are various other articles and news releases regarding the Coney Island/Sea Gate Project, the history of the beach erosion problem, and the USACE's repeated attempts and ongoing promises to mitigate the damages suffered by property owners in Sea Gate due to the Army Corps' original project that was completed in 1995. Included in **Exhibit E** is an article dated April 16, 2012, six months before Hurricane Sandy, in which it was announced that the State of New York, along with the Army Corps of Engineers, will fund the long-awaited project to prevent coastal erosion at Coney Island and Sea Gate.

E.    **Plaintiff's Justifiable Uncertainty as to the Permanency of the Damages**

For many years since the purchase of his home in Sea Gate, Brooklyn, Plaintiff has sustained continuous damage to his property from the erosion of the beach abutting his property, and the blowing of the sand onto his property, which forces Plaintiff to expend his own funds to have the sand removed and his property restored.

It is not disputed that the Government's actions in the construction of the Coney Island T-groin, which work was completed in 1995, was the main cause of the sand coming on to

Plaintiff's property. In fact, in the *Vaizburd* matter, it was already determined and confirmed on appeal and is thus *res judicata*, that the actions taken by the Army Corps for the 1995 work constituted a taking claim under the Fifth Amendment.

It is also not disputed that since the 1995 work has been completed, the Army Corps of Engineers has been aware of the beach erosion and sand shifting in Sea Gate. It is further undisputed that the Army Corps, since 1995, has also been undertaking efforts to mitigate this damage, including repeated sand refills, and has been conducting and actually produced not one, but two "Limited Reevaluation Reports" in 2004 and again in 2013.

Finally, it is not disputed that it was not until 2014, after finally being granted the federal funds to do so, that the Army Corps has actually begun to do the work to protect the Sea Gate and Coney Island shoreline and property owners from the ravages of the ongoing sand shifting and beach erosion.

Therefore, since 1995, and in 2000, 2004, 2008, 2012, 2013, 2014 and now in 2015, the Army Corps of Engineers and the federal government have been promising to stabilize the area and mitigate the damages caused to the Sea Gate property owners, promises upon which Plaintiff was justifiably uncertain would finally resolve the issue of the permanent taking of his property.

Indeed, due to the fact that it was not until February 2015, only a month ago, that the Coney Island/Sea Gate restoration project actually began, and is not projected to be completed until the spring/summer of 2016, it is still uncertain whether or not this project will be successful in stabilizing the sand shifting onto Plaintiff's property, or will be unsuccessful and result in a permanent taking of Plaintiff's property. It will not be until the project is complete in 2016 (the projected year of completion), and perhaps even at sometime after the completion down the road,

11

that that the permanent nature of the taking is evident and the extent of the damage is foreseeable.

In other words, not only has the six year statute of limitations not run, it has been tolled by the Government's repeated attempts and promises to mitigate the damages and stabilize the gradual physical taking of Plaintiff's property, and the Sea Gate community in general. Thus, Plaintiff's obligation to sue has not yet arisen since the permanent nature of the Government's action is not yet evident and will not be until after the completion of the work that only recently began and will not be completed until at least 2016, and only then will Plaintiff be able to reasonably foresee the extent of the damage to his property.

### F.    The *Vaizburd* Decision

In addition to the above arguments that the stabilization and justifiable uncertainty doctrines apply to toll the statute of limitations in this matter, in opposition to Defendant's motion to dismiss, Plaintiff also asserts that Defendant's motion is misguided in its application of the *Vaizburd* Decision to the issue in the instant matter of the statute of limitations.

In the original *Vaizburd* matter, there was no issue raised with regards to the statute of limitations. The issues ultimately decided in that case were whether plaintiff's claim constituted a taking under the Takings Clause of the Fifth Amendment, and what, if any, compensation the Vaizburd's were entitled to for the Government's taking of their property. Ultimately, the Court found that the results of the Army Corps' actions with regard to the construction project at Coney Island beach, which was completed in 1995, did constitute a taking under the Fifth Amendment, and that the Vaizburds were entitled to a form of compensation for the taking.

However, what distinguishes the *Vaizburd* case from the instant one is that here there is

an issue with regards to the statute of limitations, whereas no such issue was raised in *Vaizburd*. It follows logically, then, that since the Complaint in the instant matter seeks a finding of *res judicata* on the issues raised in *Vaizburd*, and since the issue of statute of limitations was not raised in that case, then the argument that *Vaizburd* is *res judicata* for all issues in the instant matter does not hold water.

In fact, it was specifically noted in the *Vaizburd* matter that the issue of when the Army Corps was going to finally resolve the beach erosion and sand shifting issue was still open to determination. Thus, essentially the *Vaizburd* Court left open the issue of the permanent nature of the taking and the foreseeability of future damages since it was unclear when the Corps' restorative project would be completed, and if indeed it would be successful when completed. The *Vaizburd* Court also noted that the Corps' prior attempts in 1999 and 2000 were unsuccessful in completing their intended goals.

Judge Bruggink, in his June 30, 2003 Opinion, a copy of which is annexed hereto as **Exhibit F**, noted that the Army Corps had undertaken steps in 1999 and again in 2000 to renourish the Sea Gate beach and protect Gravesend Bay (which is the part of Sea Gate where Plaintiff's property is located) from further sand deposition. Judge Bruggink further noted that, "in any event, that whatever the Corps planned to do by way of sand removal would not have restored the pre-taking condition ..." *See* **Exhibit F** at page 3.

Judge Bruggink further noted in this 2003 Opinion that, "the only long term solution to the Gravesend problem will be <u>implementation</u> of the Corps' current plan to construct a series of 'T-groins' on Sea Gate beach." And that the "project has received Congressional approval, but has not been funded. The Corps currently estimates that the project will be built in 2005." *See*

13

**Exhibit F** at pages 3-4 (emphasis added).

This furthers Plaintiff YURIY PRAKHIN's argument in his opposition to the motion to dismiss for lack of jurisdiction. It just shows that for years the USACE has been promising and attempting to resolve the problem but the uncertainty and constant changing of their timeline has rendered it impossible to yet determine the permanent nature of the taking and the forseeable damages. Hence, the stabilization doctrine should apply.

### G. Defendant Does Not Demonstrate that the Stabilization Doctrine Should be Excluded

Finally, the Defendant UNITED STATES has failed to discuss how traditional accrual principles apply to the exclusion of the stabilization doctrine.

As discussed earlier, the *Etchegoinberry* Court found, "Binding precedent establishes that the stabilization doctrine applies when a taking is effected by a gradual, continual physical process, rather than a discrete event." 114 Fed.Ct. 437 at 483.

Since it is undisputed that the taking has been a gradual, continual physical process rather than a discrete event, it is binding then that the stabilization doctrine applies. The Defendant's motion fails to show otherwise.

Moreover, the Defendant's argument that their historic aerial photographs, which are not accompanied by any expert testimony, prove that there has been no significant additional accumulation of sand since April 2003 is not completely accurate. At best the photos only show the border lines of the accumulated sand. They do not reflect the tremendous amount of sand that has accumulated and piled up within those borders, continuing to this day. In fact, the amount of sand that continues to accumulate and cause damage is very difficult to calculate as it

is constantly blowing and shifting. It has definitely not stabilized, nor has Defendant provided any expert testimony that it has.

Therefore, since the stabilization doctrine must apply to the instant matter, and, based on the analysis above, the situation in Sea Gate has not yet stabilized so that the permanent nature of the taking is not yet evident, and the extent of the damage is not yet foreseeable, then the time for Plaintiff to make a claim under the Fifth Amendment's Taking Clause has not yet accrued. Thus, the Complaint in the instant action was filed timely, this Court has jurisdiction to hear this matter, and Defendant's motion should be denied.

### III. CONCLUSION

For the foregoing reasons, Plaintiff YURIY PRAKHIN respectfully asks that the Court deny the motion to dismiss made by Defendant UNITED STATES, and permit Plaintiff's action to proceed in its normal course of litigation.

Dated: March 6, 2015                                   Respectfully submitted,

                                                       /s/ Rachel L. Kaylie
                                                       Rachel L. Kaylie, Esq.
                                                       Law Office of Yuriy Prakhin, P.C.
                                                       Counsel for Plaintiff
                                                       YURIY PRAKHIN
                                                       1883 86th Street, 2nd Floor
                                                       Brooklyn, NY 11214
                                                       718-946-5099 (tel.)
                                                       718-373-7614 (fax)

Service by e-filing