# In the United States Court of Federal Claims

No. 14-924L

Filed: July 29, 2015

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| YURIY PRAKHIN, | Jurisdiction; |
| Plaintiff, | Motion to Dismiss, RCFC 12(b)(1); |
| v. | Statute of Limitations, 28 U.S.C. § 2501; |
| THE UNITED STATES, | Takings Clause, U.S. Const. amend. V. |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Rachel L. Kaylie**, Law Office of Yuriy Prakhin, New York, New York, Counsel for Plaintiff.

**Carter F. Thurman**, United States Department of Justice, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND ORDER

**BRADEN**, *Judge*.

## I.   RELEVANT FACTUAL BACKGROUND.[1]

On December 19, 1995, Yuriy Prakhin purchased a home and the adjacent real property located at 3857 Ocean View Avenue, Brooklyn, New York, 11224. Compl. ¶ 1. This property is in Sea Gate, "a private, gated community in Brooklyn . . . . occup[ying] the western end of the Coney Island peninsula," and adjacent to the property at issue in *Vaizburd v. United States*, 57 Fed. Cl. 221, 222 (2003). Compl. ¶ 5.

Prior to 1995, the Sea Gate Community private beach ("Sea Gate Beach") and adjacent public beach experienced "severe erosion." *Vaizburd*, 57 Fed. Cl. at 222–23. This prompted the

---

[1] The relevant facts discussed herein were derived from the September 29, 2014 Complaint ("Compl.") and attached Exhibits ("Pl. Exs. A–C"), and *Vaizburd v. United States*, 57 Fed. Cl. 221 (2003) ("*Vaizburd*"), attached as Court Exhibit A. Compl. ¶ 6 (Plaintiff "asks that this Court adopt th[ose] relevant facts [in *Vaizburd*] as if enumerated at length herein").

United States Army Corps of Engineers ("Corps") to extend the "length and the bulk of the existing groin" in order to replenish the beaches ("Coney Island Project"). *Id*. at 223.

In January 1995, the Corps constructed an 860-foot rock groin and placed 3 million cubic yards of sand on both beaches. *Id.* By January 1997, waterfront homeowners along Ocean View Avenue began complaining of sand accretions that created a beach behind their homes as a result of the Coney Island Project.[2] *Id.* By August 1998, the sand behind the Ocean View Avenue homes was "almost as wide as the Sea Gate Beach," and by April 1999, the accretion was "wider than most of Sea Gate Beach." *Id.* Due to the "relatively fine" sand and the "long, unimpeded wind approach to Ocean[ V]iew Avenue," the wind is able to "march sand up from the beach, across the bulkheads and houses, and into the neighborhood." *Id.* at 225.

In 1999, the Corps planned to move 20,000 cubic yards of sand from Gravesend Bay to Sea Gate Beach, but the *Vaizburd* plaintiff and neighbors denied the Corps permission to access the beach from their property.[3] *Id.* at 224. In 2000, the City of New York performed a "similar operation," although it removed less sand than the Corps planned. *Id.* In October 2000, the Corps transferred 100,000 cubic yards of sand from Gravesend Bay to Sea Gate Beach. *Id.* These initiatives achieved only temporary results and were repeated "periodically," but did not restore the Ocean View Avenue homes to their prior condition. *Id.*

In 2000, the Corps obtained congressional authorization for the Sea Gate Project. Pl. Resp. Ex. A at 3 (Sea Gate Project informational slides). The Sea Gate Project was intended to solve the problems of "[r]apid sand erosion in Sea Gate" and "[a]ccretion of sand along Gravesend Bay." Pl. Resp. Ex. A at 2. In 2004, the Corps completed a Limited Reevaluation Report of the Sea Gate Project. Pl. Resp. Ex. E at 35 (Sea Gate Project Informational Slides). The record does not indicate that any material events transpired over the next nine years.

On October 1, 2004, the United States Court of Appeals for the Federal Circuit vacated the trial court's decision in *Vaizburd*, because the Government conceded, on appeal, that sand accretion amounted to a taking, and remanded the case for a determination of sufficiency of evidence as to the cost of removing sand on the property at issue. *Vaizburd v. United States*, 384 F.3d 1278, 1283–87 (Fed. Cir. 2004).

In 2013, Congress enacted the Disaster Relief Appropriations Act of 2013 to fund the construction of the Sea Gate Project. Disaster Relief Appropriations Act of 2013, Pub. L. No. 113-2, 127 Stat. 4; Pl. Resp. Ex. E at 35 (Sea Gate Project Informational Slides). Thereafter, the Corps performed a second Limited Reevaluation Report and planned to begin construction in Fall 2014. Pl. Resp. Ex. E at 35 (Sea Gate Project Informational Slides).

The Sea Gate Project will involve the construction of "T-groins" outside of Sea Gate Beach to "help manage sediment movement and reduce erosion" on the beach. Pl. Resp. Ex. E at 33 (Corps' "Sea Gate—Additional Information"). In addition, the Corps plans to move 150,000 cubic

---

[2] The record does not indicate whether Mr. Prakhin complained of sand accretions by 1997.

[3] The record does not indicate whether Mr. Prakhin denied the Corps permission to enter his property.

2

yards of sand from Gravesend Bay, *i.e.*, the area behind Mr. Prakhin's home, and Jamaica Bay Federal Navigation Channel to the new T-groins. Pl. Resp. Ex. E at 22 ("Elected Officials Break Ground On T-Groins To Prevent Beach Erosion In Seagate," by Rachel Silberstein, February 16, 2015), 34 (Sea Gate Project Informational Slides).

## II.   PROCEDURAL HISTORY.

On September 29, 2014, Mr. Prakhin ("Plaintiff") filed a Complaint in the United States Court of Federal Claims, alleging that the sand that accreted on his property violated the Takings Clause of the Fifth Amendment.[4]

On December 15, 2014, the Government filed a Motion To Dismiss ("Gov't Mot."), pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). On March 6, 2015, Plaintiff filed a Response ("Pl. Resp."). On April 20, 2015, the Government filed a Reply ("Gov't Reply").

## III.   DISCUSSION.

### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government." *United States v. Mitchell*, 463 U.S. 206, 216 (1983) (quoting *Testan*, 424 U.S. at 400). And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*,

---

[4] Plaintiff seeks a jury trial. Compl. at 1. But, the United States Court of Federal Claims does not conduct jury trials. "In this court the judge, rather than a jury, is always the trier of fact." *Persyn v. United States*, 34 Fed. Cl. 187, 194 (1995).

3

846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

In this case, Plaintiff has stated a claim for money damages against the United States under the Takings Clause of the Fifth Amendment of the Constitution. As such, the court has jurisdiction to adjudicate Plaintiff's claim.

### B. Standard of Review for a Motion to Dismiss Pursuant to RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion." *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) (allowing a party to assert, by motion, "lack of subject-matter jurisdiction"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations [of the complaint] to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). "If a motion to dismiss for lack of subject matter jurisdiction . . . challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute." *Reynolds*, 846 F.2d at 747.

The United States Supreme Court has held that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1157–58 (Fed. Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) ("A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable. If the plaintiff fails to include such allegations in his complaint, it is deficient.") (citation omitted).

### C. The Government's December 15, 2014 Motion To Dismiss.

#### 1. The Government's Argument.

The Government argues that the court does not have subject matter jurisdiction to adjudicate Plaintiff's claim, because the relevant events stabilized more than six years before Plaintiff filed his September 29, 2014 Complaint. Gov't Mot. at 9; *see also* 28 U.S.C. § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed *within six years after such claim first accrues*.") (emphasis added).

According to the stabilization doctrine, accrual occurs when it is clear that "the gradual process set into motion by the [G]overnment has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined." Gov't Reply at 3–4. A potential plaintiff need not wait until "damages are complete and fully calculable" before filing suit. Gov't Reply at 4. Instead, his claim accrues when the "permanent nature" of the process is clear, "and the extent of the damage is reasonably foreseeable." Gov't Reply at 4.

4

The *Vaizburd* court determined that a takings claim "accrued no later than December 31, 1995." Gov't Mot. at 1; *see also Vaizburd*, 57 Fed. Cl. at 230 ("[T]he court finds that the process of accretion had sufficient impact . . . and was sufficiently noticeable and recurring to constitute a taking, as of December 31, 1995."). Plaintiff's claim is based upon the same Coney Island Project as in *Vaizburd*, and there is no alleged material difference regarding how the two plaintiffs' homes were affected. *See* Compl. ¶ 5. Therefore, the court should concur with the December 31, 1995 accrual date in *Vaizburd* and find Plaintiff's claim time-barred, because the statute of limitations expired on December 31, 2001—six years after December 31, 1995 accrual. Gov't Mot. at 8.

Alternatively, even if December 31, 1995 is not the accrual date, Plaintiff was aware of the sand accretions more than six years prior to filing his September 29, 2014 Complaint. Gov't Mot. at 9. In 1999, the sand accretion was "wider than most of Sea Gate [B]each." *Vaizburd*, 57 Fed. Cl. at 223. By April 2003, the beach behind Plaintiff's home had grown from "a thin but noticeable margin of sand" to "about four hundred feet wide," and the blowing sand had become problematic. Gov't Mot. at 9. Thus, by 2003 Plaintiff knew or should have known of the permanence of the sand accumulating on his property—eleven years prior to the September 29, 2014 Complaint. Gov't Mot. at 9–10.

And, the justifiable uncertainty doctrine does not apply here, because it has been applied only in cases when the Government made specific promises. Gov't Reply at 5–6. Although there is a plan to provide a long-term solution to the continual erosion of Sea Gate Beach, the Sea Gate Project "has never included a plan, proposal, or promise to remove sand from any properties, including Plaintiff's." Gov't Reply at 6. Because the existing sand accumulation is the source of the alleged taking—not its future additional accumulation—Plaintiff cannot invoke justifiable uncertainty. Gov't Reply 6–8.

### 2.    Plaintiff's Response.

Plaintiff responds that the stabilization doctrine and justifiable uncertainty doctrine combine to delay the accrual of his claim. Pl. Resp. at 7. Because the Government has made promises to mitigate damage caused by the sand accretion, Plaintiff has been unable to determine the permanence of the accretion, and reliance on these promises delayed filing. Pl. Resp. at 8.

The justifiable uncertainty doctrine provides that the Government's promises to mitigate damages delay accrual of a takings claim. The United States Court of Appeals for the Federal Circuit has held that Government promises to mitigate damage to a plaintiff's beach by proposing a sand transfer plant that would restore the flow of a river and restore the beach to its prior condition "destroyed any predictability of the extent of damage." *Applegate v. United States*, 25 F.3d 1579, 1583 (Fed. Cir. 1994). Therefore, the plaintiff was justifiably uncertain as to whether there would be permanent physical taking. *Id.*; *see also Etchegoinberry v. United States*, 114 Fed. Cl. 437, 478 (2013) ("[J]ustifiable uncertainty doctrine builds upon the stabilization doctrine and holds that [G]overnment promises to mitigate damages to a plaintiff's property, which otherwise would constitute a taking, can warrant application of the stabilization doctrine and delay the accrual of a taking.").

The Sea Gate Project received congressional approval in 2000 but without funding. Pl. Resp. Ex. E at 35. In 2004, a "limited Revaluation Report" was issued. Pl. Resp. Ex. E at 35. In

5

2013, Congress authorized funding. Pl. Resp. Ex. E at 35. In February 2015, construction began, with an expected completion date of 2016. Pl. Resp. at 8–11. All of these Government promises created a justifiable uncertainty as to whether its actions would resolve the issue of the taking. Pl. Resp. at 11–12. As such, the permanence of the Government's action is not settled and will not be settled until at least the completion of the Sea Gate Project in 2016. Pl. Resp. at 12. Therefore, the statute of limitations has not yet run.

### 3.     The Court's Resolution.

The Takings Clause of the Fifth Amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. Whether a compensable taking has occurred requires the court to resolve "a question of law based on factual underpinnings." *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001) (citations omitted).

As a matter of law, a potential plaintiff must file a claim within six years of accrual for the United States Court of Federal Claims to have jurisdiction. *See* 28 U.S.C § 2501 ("Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."). Because this case involves a waiver of the United States' sovereign immunity, the six-year statute of limitations must be construed strictly. *See Navajo Nation v. United States*, 631 F.3d 1268, 1273 (Fed. Cir. 2011) (citing *John R. Sand & Gravel Co. v. United States* 552 U.S. 130, 136–39 (2008) ("This six-year limitations period is jurisdictional and may not be waived.")).

Generally, "a claim 'first accrues' when all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action." *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988); *see also Boling v. United States*, 220 F.3d 1365, 1370 (2000) ("In general, a takings claim accrues when all events which fix the [G]overnment's alleged liability have occurred and the plaintiff was or should have been aware of their existence.") (internal quotation marks omitted). Cases involving a gradual physical process such as sand accretion, however, require a more holistic factual examination in order to determine when accrual occurs. *See Boling*, 220 F.3d at 1370 ("[I]n cases where the [G]overnment leaves the taking of property to a gradual physical process, rather than utilizing the traditional condemnation procedure, determining the exact moment of claim accrual is difficult.").

But, the United States Supreme Court has held that the condition alleged to be a taking must be "stabilized" in order to determine the date of a Fifth Amendment takings claim accrual. *See United States. v. Dickenson*, 331 U.S. 745, 749 (1947) ("[T]here is nothing in legal doctrine[] to preclude the law from meeting such a process by postponing suit until the situation becomes stabilized."). A situation stabilizes when the nature of the taking becomes evident, damages are reasonably foreseeable, and the potential plaintiff knew or should have known that the claim existed. *See Mildenberger v. United States*, 643 F.3d 938, 946 (Fed. Cir. 2011) ("The obligation to sue arises once the permanent nature of the Government action is evident[.]"); *see also Boling*, 220 F.3d at 1371 (Fed. Cir. 2000) ("[O]nce it is clear that the process has resulted in a permanent taking and the extent of the damage is reasonably foreseeable, the claim accrues and the statute of limitations begins to run.").

The United States Court of Federal Claims' statute of limitations is not subject to tolling. *John R. Sand & Gravel*, 552 U.S. at 134. But, the United States Court of Appeals for the Federal Circuit has recognized that delaying accrual of a claim is not equivalent to tolling the statute of limitations. *See Mildenberger*, 643 F.3d at 947–48 (outlining the history of the stabilization and justifiable uncertainty doctrines and recognizing their continued application after *John R. Sand & Gravel*). Thus, even though the court has an obligation to consider a jurisdictional statute of limitations claim *sua sponte*, it has determined that Plaintiff's justifiable uncertainty doctrine argument does not toll the statute of limitations; instead, it delays accrual of its Fifth Amendment takings claim. *See id.*

A potential plaintiff is not required to wait until the process is complete or the damages are fully known to file suit. *See Banks v. United States*, 741 F.3d 1268, 1281 (Fed. Cir. 2014) ("[T]he statute of limitations under the Tucker Act only begins to run when it becomes clear that the gradual process set into motion by the [G]overnment has effected a permanent taking, not when the process has ceased or when the entire extent of the damage is determined.") (internal quotation marks omitted); *see also Boling*, 220 F.3d at 1371 ("The contention that *Dickinson* stands for the proposition that the filing of a lawsuit can be postponed until the full extent of the damage is known has been soundly rejected."); *see also Columbia Basin Orchard v. United States*, 116 Ct. Cl. 348, 357 (1950) ("[W]e do not think the [United States] Supreme Court, in the *Dickinson* case, meant to hold that plaintiff was entitled to wait until any possibility of further damage had been removed.").

The United States Court of Federal Claims has determined that the Coney Island Project caused the accumulation of sand behind the Ocean View Avenue houses. *See Vaizburd*, 57 Fed. Cl. at 223 (finding that there is a "natural scour along the Coney Island shore" that carries sand from Sea Gate Beach into Gravesend Bay, where it "accumulates behind the houses on Ocean View Avenue"). Because of the "relatively fine" sand and the "long, unimpeded wind approach to Ocean[ V]iew Avenue," the wind is able to "march sand up from the beach, across the bulkheads and houses, and into the neighborhood." *Id.* at 225. The sand enters the yards, houses, and street of Ocean View Avenue residents. *Id.* In response, "most of [the] neighbors, have [constructed] different means to keep sand from getting into their backyards." *Id.* Even so, the *Vaizburd* plaintiff's backyard filled with up to three feet of sand, which was typical of other homes in the neighborhood. *Id.*

In this case, the September 29, 2015 Complaint alleges that accretion of sand initially caused by the Coney Island Project has not stabilized, because Plaintiff does not "know when or if his land [will] be permanently destroyed, and the extent of the damage to [his] property is not yet foreseeable." Pl. Resp. at 8. But, this is not the standard for stabilization. Stabilization does not occur once the situation is completely settled, but instead when the environmental forces have a substantial, evident, and permanent effect on a plaintiff's property. *See Boling*, 220 F.3d at 1371 ("Properly understood, stabilization as discussed in *Dickinson* is not deferred until the progressive environmental damage stops, but occurs when the environmental forces have substantially and permanently invaded the private property such that the permanent nature of the taking is evident and the extent of the damage is reasonably foreseeable."). In *Vaizburd*, the United States Court of Federal Claims held that by the impact of the accretion process was sufficiently noticeable by December 31, 1995 to constitute a taking. *See Vaizburd*, 57 Fed. Cl. at 240 ("[T]he process of accretion had sufficient impact, *i.e.*, impeded the plaintiff's access to the water, and was

7

sufficiently noticeable and recurring to constitute a taking, as of December 31, 1995."). For these reasons, the court has determined that the sand accretion on Plaintiff's property attributed to the Coney Island Project was stabilized by December 31, 1995, unless sufficient evidence to the contrary is proffered.

### a. Plaintiff States A Facially Plausible Claim Regarding Justifiable Uncertainty.

The justifiable uncertainty doctrine, however, delays the accrual of a takings claim when the Government promises to mitigate the damage caused by a taking, so that a plaintiff is justifiably uncertain as to the extent and permanence of the damage. *See Mildenberger*, 643 F.3d at 947 ("As explained in *Banks v. United States*, [314 F.3d 1304, 1309 (Fed. Cir. 2003),] the Government's promises to mitigate damages caused by a continuous physical process delays accrual of a takings claim when the claimant demonstrates that the predictability [and permanence] of the extent of the damage to the [claimant's] land was made justifiably uncertain by the Corps' mitigation efforts.") (internal quotation marks omitted); *see also Applegate*, 25 F.3d at 1583 (Government promises to build a sand treatment plant that would stop the continuing erosion and restore the land previously eroded were sufficient evidence to allow the plaintiff to invoke the justifiable uncertainty doctrine.); *see also Banks v. United States*, 314 F.3d 1304, 1310 (Fed. Cir. 2003) (Ongoing Government promises to mitigate and actual mitigation efforts rendered Plaintiff justifiably uncertain as to the "predictability and permanence" of the extent of the alleged takings damage.).

Here, Plaintiff argues that the Sea Gate Project created justifiable uncertainty that delayed accrual of its Fifth Amendment takings claim. Pl. Resp. at 7–8. Construing all inferences in the Plaintiff's favor and accepting all of the facts alleged in the September 29, 2014 Complaint and March 6, 2015 Response[5] as true, the court finds that Plaintiff's reliance on the doctrine of unjustifiable certainty is "plausible on its face." *See Iqbal*, 556 U.S. at 678 ("[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). The Government's contention that the Sea Gate Project would not mitigate the alleged taking, but instead prevent further accretion, is a disputed factual issue. Therefore, the court must resolve these factual issues before deciding whether the statute of limitations has run. *See Green v. United States*, 586 F. App'x 586, 587 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 1905 (2015) ("[I]n resolving disputes regarding jurisdictional facts, a trial court may look beyond the pleadings and inquire into the jurisdictional facts that are disputed."). As such, Plaintiff is entitled to conduct limited jurisdictional discovery to proffer evidence as to the nature of the alleged Government's promises and the actual effect that the Sea Gate Project will have on mitigation, and whether or not Plaintiff had complained about the shifting of the sands around the same time as the *Vaizburd* case.[6]

---

[5] The stabilization doctrine first was raised in the Government's December 15, 2015 Motion To Dismiss. As such, Plaintiff did not raise the issue in his September 29, 2014 Complaint, and instead rebutted the Government's stabilization doctrine argument in his March 6, 2015 Response.

[6] Plaintiff also contends that *res judicata* applies to the issues raised in *Vaizburd*, because there was no statute of limitations issue in *Vaizburd*. Pl. Resp. at 13. This argument fails, because *res judicata* requires that the litigants in both matters be the same or share privity, which is not

## IV. CONCLUSION.

For these reasons, the Government's July 22, 2013 Motion To Dismiss is denied. *See* RCFC 12(b)(1). The parties are ordered to submit a proposed scheduling order regarding jurisdictional discovery within 30 days.

**IT IS SO ORDERED.**

*s/ Susan G. Braden*
**SUSAN G. BRADEN**,
**Judge**.

---

present in this case. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 1278 (Fed. Cir. 2014), *cert. denied*, 135 S. Ct. 1401 (2015) ("[T]hree preconditions must be met: (1) an identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first.").

9